

**ORDERED in the Southern District of Florida on May 30, 2019.**

Mindy A. Mora, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:  Case No.: 15-28505-BKC-MAM

RENE CANTIN,  Chapter 7

 Debtor.
_____/

### <u>MEMORANDUM OPINION AND ORDER DENYING DEBTOR'S MOTIONS FOR CONTEMPT AND SANCTIONS (ECF NOS. 48, 52, 73, & 82), GRANTING CREDITORS' MOTION FOR SANCTIONS (ECF NO. 105), AND SETTING HEARING</u>

**THIS MATTER** came before the Court upon numerous motions for contempt

and sanctions (collectively, the "<u>Sanctions Motions</u>") filed on behalf of the above-

captioned debtor (the "<u>Debtor</u>") by his former counsel, Donald Jacobson ("<u>Jacobson</u>"),

and a motion for Rule 9011 sanctions  (the "<u>RNCP Sanctions Motion</u>")[1] filed by

---

[1] Jacobson, in his capacity as counsel to Debtor, filed at least seven different documents seeking sanctions against a host of unrelated persons and entities over a period of approximately two months. *See* ECF Nos. 48, 52, 66, 67, 70, 73, and 82. Jacobson then quickly filed a notice to withdraw as counsel to Debtor, along with a notice of withdrawal of certain motions. *See* ECF Nos. 90 and 92. Because the

counsel to Rusty Norvell Concrete Pumping Services, Inc. ("RNCP"), Janice Norvell ("Ms. Norvell"), and John Norvell ("Mr. Norvell") (RNCP, Ms. Norvell, and Mr. Norvell collectively, "Creditors").

In the Sanctions Motions, Debtor argues that Creditors[2] violated the automatic stay imposed by 11 U.S.C. § 362 during Debtor's bankruptcy case (the "Bankruptcy Case") and the discharge injunction provided for in 11 U.S.C. § 524. Specifically, Debtor argues that Creditors' participation in the state of Florida's ("State") prosecution of a worthless check allegedly uttered by Debtor violated the Bankruptcy Code and, further, that the State's arrest of Debtor as part of such prosecution caused Debtor extreme mental anguish and other harm for which Creditors ought to compensate him.

Creditors contend that no violation of the stay or discharge injunction occurred. In the RNCP Sanctions Motion, Creditors seek sanctions against Debtor and Jacobson for protracted litigation without sufficient factual and legal basis. Having considered all relevant pleadings, memoranda, exhibits, witness testimony, and the full record of this Bankruptcy Case, the Court denies Debtor's Sanctions Motions and grants the RNCP Sanctions Motion.

---

motions were nearly incomprehensible and the relief sought in each was largely duplicative, the Court set a status conference on September 4, 2018 to determine precisely which motions Debtor intended to prosecute, and against whom. *See* ECF No. 95. Based upon the representations of Jacobson at the status conference, Debtor pursued only the claims addressed in ECF Nos. 48, 52, 73, and 82 (defined *supra* as the Sanctions Motions) against the parties defined herein as the "Creditors". The Court deems all other claims withdrawn.

[2] Debtor occasionally referred to "Rusty Norvell" in testimony and pleadings. Creditors' Exhibit B clarifies that "Rusty Novell" and "John Norvell" are the same person. A review of the entire record indicates that Debtor likely intended "Rusty Norvell" to mean RNCP. Debtor's lack of precision created notice issues, as discussed further herein.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and the standing order of reference codified in Rule 87.2 of the Local Rules of the District Court for the Southern District of Florida.

## PROCEDURAL HISTORY

The procedural history of this Bankruptcy Case is extraordinarily convoluted and confusing. Debtor has repeatedly filed, then withdrawn, numerous motions seeking substantially similar relief. Through Jacobson, Debtor reopened his Bankruptcy Case twice, resulting in a total of three different periods of activity. Jacobson later hastily withdrew from his representation of Debtor prior to the evidentiary hearing upon the Sanctions Motions, leaving Debtor to fend for himself at trial. Since Jacobson's withdrawal, Debtor has followed Jacobson's practice of filing procedurally anomalous and often inappropriate motions. This pattern continued during the period in which the Sanctions Motions remained under advisement. *See, e.g.*, ECF Nos. 151 and 153.

A. <u>Initial Bankruptcy Filing (First Phase)</u>

Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on October 19, 2015 (the "<u>Petition Date</u>"). Jacobson served as Debtor's counsel throughout the Bankruptcy Case. Debtor received his discharge on January 22, 2016 and, on March 19, 2016, the chapter 7 trustee ("<u>Trustee</u>") filed a report of no distribution.  *See* ECF Nos. 24 and 26.  Approximately one month later, the Court entered a final decree and discharge of Trustee, closing the Bankruptcy Case. *See*

ECF No. 27.

B. <u>Reopening (Second Phase)</u>

a. <u>First Motion to Reopen and First Contempt Motion</u>

A little less than one year later, on February 8, 2017, Debtor, represented by Jacobson, filed a motion to reopen (the "<u>First Motion to Reopen</u>") the Bankruptcy Case to add RNCP as a creditor. *See* ECF No. 28. Debtor then immediately (3 minutes later) filed a motion for contempt (the "<u>First Contempt Motion</u>") against RNCP and Ms. Norvell.[3] *See* ECF No. 29. Prior to that date, Debtor had never listed RNCP or Ms. Norvell as creditors in the Bankruptcy Case.

b. <u>Amended Motion to Reopen</u>

Two days later, Debtor filed an amended motion to reopen the Bankruptcy Case on negative notice (the "<u>Amended Motion to Reopen</u>"). *See* ECF No. 31. Despite Debtor's belated attempt to reopen the case without a hearing, the Court nonetheless set the First Motion to Reopen for hearing on March 7, 2017, along with the First Contempt Motion. On February 21, 2017, Creditors' counsel filed a notice of appearance and request for service of documents. *See* ECF No. 35.

c. <u>Withdrawals and Procedural Snafus</u>

On February 23, 2017 (two days after receiving notice that the respondents to the First Contempt Motion were represented by counsel and therefore were likely to

---

[3] Neither RNCP nor Ms. Norvell were listed on Debtor's initial schedules and statements. ECF No. 10. Debtor therefore filed a motion for contempt against creditors who Debtor freely admitted had never received notice of the Bankruptcy Case or discharge order. Debtor characterized the alleged violation as "willful", a patent impossibility. *See Keen v. Premium Asset Recovery Corp. (In re Keen),* 301 B.R. 749, 753 (Bankr. S.D. Fla. 2003) (unknowing violation of stay not willful).

attend the scheduled hearing), Debtor withdrew the First Contempt Motion (but not the Amended Motion to Reopen) via a notice of withdrawal that specifically referenced the March 7 hearing date. On March 6, 2017—one day prior to the scheduled hearing—Debtor filed a certificate of no response as to the First Motion to Reopen (ECF No. 28), citing the expiration of the negative notice provisions in the Amended Motion to Reopen (ECF No. 31).[4] *See* ECF No. 37. The result was a mélange of indecipherable pleadings.

A few hours later (presumably trying to avoid the necessity of attending the hearing that remained scheduled for the next day), Debtor filed a notice of withdrawal as to the First Motion to Reopen (ECF No. 28), but erroneously referred to the Amended Motion to Reopen (ECF No. 29) in the text of the document. *See* ECF No. 38 (the "<u>First Notice of Withdrawal</u>").[5] Four minutes later, Debtor filed yet another notice of withdrawal. *See* ECF No. 39 (the "<u>Second Notice of Withdrawal</u>").

The Second Notice of Withdrawal referred to the First Motion to Reopen in the title and the body of the text, made no reference to the Amended Motion to Reopen,

---

[4] Clearly, filing a certificate of no response that referenced the First Motion to Reopen (which had already been set for hearing) by docket entry number while simultaneously referencing the negative notice period set forth in the Amended to Reopen is procedurally inappropriate. Local Rule 9013-1(D) permits the filing of motions upon negative notice, provided that the motion complies with certain parameters. Those parameters include the lack of response by opposing parties. More importantly, the point and purpose of negative notice is the avoidance of unnecessary hearings on uncontested matters. Local Rule 9013-1(D) does not permit a movant to employ the negative notice procedure to circumvent the requirement of a previously-scheduled hearing, nor does it allow use of negative notice procedures for motions not originally filed in compliance with the rule. See L.R. 9013-1(D). Debtor's attempt to use Local Rule 9013-1(D)'s negative notice procedure *after* the Court scheduled the First Motion to Reopen for hearing is simply bizarre.

[5] The record of this Bankruptcy Case is replete with similar instances of sloppy drafting and procedural anomalies. In each instance, Jacobson was the filing attorney.

and attempted to "withdraw" (rather than amend) the First Notice of Withdrawal.

Collectively, the erroneous motions and crisscrossed withdrawals created a bewildering thicket of procedurally anomalous filings. It is unclear from the record whether Debtor's counsel personally advised Creditors' counsel of the various withdrawals and intended cancellation of the hearing date, as professional courtesy would require, but it is evident that Debtor's disjointed and disorganized approach placed an unnecessary burden upon the Court.[6]

### d. Amended Schedules and Case Closure

On March 7, 2017, the Court entered an order granting Debtor's request to reopen the Bankruptcy Case. *See* ECF No. 40. Soon thereafter, Debtor filed an amended schedule E/F that included RNCP as an unsecured creditor (but not Mr. or Ms. Norvell, despite Debtor's prior request for sanctions against Ms. Norvell). *See* ECF No. 43 ("Amended Schedule E/F"). On June 6, 2017, the Court closed the case again.

## C. Another Reopening (Third Phase)

### a. Second Motion to Reopen and Second Contempt Motion

Approximately one year later, on May 15, 2018, Debtor filed a second motion

---

[6] This convoluted and procedurally confusing series of filings is typical of the history of the Bankruptcy Case. In his capacity as counsel to Debtor, Jacobson repeatedly filed, re-filed, and withdrew countless documents. The resulting chaos taxed the Court and undoubtedly caused no limit of consternation upon those persons called to respond to the various filings. The Court will elaborate no further upon the nature of Jacobson's representation at this juncture, but notes that a full recitation of the procedural history of the Bankruptcy Case necessarily entails a great deal of explanation.

to reopen the Bankruptcy Case (a third time)[7] for the stated purpose of filing yet another motion for sanctions. *See* ECF No. 47 (the "Second Motion to Reopen").[8] Three days later, Debtor filed a second motion for sanctions, this time against RNCP, Mr. Norvell (who was not listed as a creditor on Amended Schedule E/F), and Ms. Norvell (who also was not listed as a creditor). *See* ECF No. 48 (the "Second Contempt Motion").[9] On the same day, without a title, description, or any identifying information, Debtor filed three additional documents consisting of a total of over 160 pages that the Court construed as "Document(s) in Support of" the Second Contempt Motion.[10] *See* ECF Nos. 49, 50, and 51. Much later that day (at 11:11 p.m.), Debtor filed a fifth document that the Court construed as yet another motion for sanctions based upon the title of the document. *See* ECF No. 52.[11]

Three days later, Jacobson filed a "Notice of Legal Authority" on Debtor's

---

[7] Although ECF No. 47 represents Debtor's third written attempt to reopen the Bankruptcy Case, the Court refers to it as the "second" motion to reopen because the (true) second filing purported to amend the first filing.

[8] In addition to the many other procedural irregularities presented in Debtors' filings, the certificate of service filed as to the notice of hearing upon the Second Motion to Reopen contained numerous typographic errors (including a failure to redact the standard form language). *See* ECF No. 56. Oddly, the signature block contained a physical signature by Jacobson and handwritten personal information, rather than being typed in the normal manner for attorneys.

[9] The formatting and writing style of the Second Motion to Reopen and the Second Contempt Motion were markedly different from any prior filing by Debtor. Both motions were replete with typographical errors and extraordinarily difficult to parse.

[10] The Second Contempt Motion is one of the four motions defined herein as the "Sanctions Motions".

[11] That document, however, consisted of a "notice of filing" a "motion" for sanctions, accompanied by an exhibit consisting of two rather innocuous-looking service emails sent to Jacobson from eservice@wlclaw.com. The purpose of filing this document as a separate "motion" in this Court is not apparent from the document itself, particularly as the emails refer to service of documents in a state court action.

behalf. *See* ECF No. 55 (the "Notice of Legal Authority"). The Notice of Legal Authority consisted of two largely indecipherable paragraphs followed by one copy of case law with handwritten notations. In addition, the Notice of Legal Authority did not reference any other filing or otherwise indicate that it was intended to be construed as a memorandum in support of a specific motion.[12]

### b. The First Hearing (Non-Evidentiary)

On June 12, 2018, the Court held a non-evidentiary hearing on the Second Motion to Reopen and the Second Contempt Motion. The Court granted the Second Motion to Reopen at that hearing but determined that Second Contempt Motion should be set for an evidentiary hearing on August 22, 2018.[13] On June 21, 2018, the Court entered an order granting the Second Motion to Reopen. *See* ECF No. 62 (the "June 2018 Order to Reopen").[14]

On June 26, 2018, six days after entry of the June 2018 Order to Reopen, Debtor (inexplicably) filed a reply (ECF No. 64) (the "Reply") to the Creditors'

---

[12] At that time, Debtor had two pending motions. Although the Court has seen similar procedural anomalies from *pro se* debtors, the Court finds it highly unusual for a licensed attorney with numerous years of experience to file documents in such a chaotic and procedurally improper manner.

[13] The Court later rescheduled the hearing to October 22, 2018. *See* ECF No. 113.

[14] Although the Court directed Jacobson to submit a proposed form of order granting the Second Motion to Reopen, the version presented to the Court was filed at the clerk's office, rather than being uploaded via CM/ECF under the procedure required for attorneys with CM/ECF filing privileges in this district. The June 2018 Order to Reopen states (in the following exact format) that it was submitted by "Debtor Rene Cantin by Counsel Donald N Jacobson PA Atty Donald N Jacobson Po [*sic*] Box 2434 Palm Beach Florida 33480 Ph.561-225-1836/ Fax 561-225-1329 Donald@dnjlaw.com" and directs the Court to send a copy to "Debtor Rene Cantin c/o Donald N Jacobson PA". The Court observes that the method, manner, and formatting of the document do not match those of documents typically submitted by attorneys. Moreover, the form of order does not match prior orders submitted by Jacobson. At this point in the Bankruptcy Case, Jacobson had not yet withdrawn as counsel, nor had he submitted a motion to do so.

response to the Second Motion to Reopen. Because the filing of the Reply post-dated entry of the June 2018 Order to Reopen, the Court deemed the Reply moot and did not consider it in any further analysis.

c.   More Sanctions Motions

On July 13, 2018, Debtor filed yet another motion for sanctions (ECF No. 66), along with an "emergency" motion for sanctions (ECF No. 67) against numerous persons and entities, including various State employees. One day later, Debtor filed an "amended" motion for sanctions (ECF No. 70). Because the "amended" motion did not reference any prior motion for sanctions, the Court was left to exercise its best judgment as which motion Debtor intended to amend.

Three days later, Debtor filed another motion for sanctions. *See* ECF No. 73. Not content with having filed at least (by the Court's count) four motions for sanctions (assuming the "amended" motion in fact amended a prior filing) and having secured a date for an evidentiary hearing upon at least one of the motions, Debtor also filed a motion for partial summary judgment (ECF No. 76) (the "Motion for Partial Summary Judgment"). [15]

d.   The Emergency Motion to Continue

Creditors responded on July 18, 2018 to the "emergency" sanctions motion

---

[15] Had the parties not previously represented to the Court that they would need approximately 60 days for discovery approximately 30 days prior to the filing of the Motion for Partial Summary Judgment (meaning discovery between the parties was still underway), and had Debtor not agreed to the necessity of an evidentiary hearing as to sanctions, the Motion for Partial Summary Judgment might have been relevant. Under the circumstances, however, Debtor's decision to file the Motion for Partial Summary Judgment was highly dubious. The Court strains to understand how Jacobson, as an experienced attorney, would have found it prudent to do so. The Court ultimately denied the Motion for Partial Summary Judgment. *See* ECF No. 114.

(ECF No. 67) with a short but cogent explanation of the facts leading up to the filing of the (many) sanctions motions. *See* ECF No. 78 ("<u>Creditors' July 18 Response</u>"). In connection with the filing of Creditors' July 18 Response, Creditors sought to continue the hearing on four of the pending sanctions motions (ECF Nos. 66, 67, 70, and 73),[16] all of which the Court had scheduled for hearing on July 31, 2018. *See* ECF No. 79 (the "<u>Emergency Motion to Continue</u>").

      e.  <u>The Email Exchange</u>

One day later, Debtor responded to the Emergency Motion to Continue by filing an amended version of one of the Sanctions Motions (ECF No. 82, which sought to amend ECF No. 73). Debtor's motion attached an email exchange between Jacobson and Creditors' counsel that shocks the professional conscience. ECF No. 82, Exhibit B (the "<u>July 17 Email Exchange</u>").

In the July 17 Email Exchange, Creditors' counsel stated that the hearing on July 31 should be moved due to professional conflicts involving counsel to multiple parties. Creditors' counsel requested consent from Jacobson to file an agreed order continuing the hearings for one week (to August 7, 2018). Nothing in Creditors' counsel's email was provoking or unprofessional; to the contrary, it was entirely cordial.[17] At 10:35 p.m. that same evening, Jacobson sent the following response:

     No, cancel your other matters [sic] your clients [sic] conduct in

---

[16] Debtor filed seven different motions for sanctions, including amended versions of prior motions, with little regard for clarity. For ease of reference and precision, the Court clarifies the relevant motion(s) by ECF number.

[17] Creditors' counsel's email reads as follows:

     I left a phone message earlier. The hearings July 31 should be continued. Neither I nor Creditors' state court counsel named in the motions up for hearing are available that

state court is absurd. You will be named in the next motion with your firm. I will file in next [sic] day. Donald

True to his word, Jacobson named Creditors' counsel personally in ECF No. 82, as well as his law firm.

f.   <u>The Emergency Hearing</u>

The Court heard the Emergency Motion to Continue on July 20, 2018 (the "<u>Emergency Hearing</u>"). Despite the breathtaking vehemence of Jacobson's reaction to the initial email request for continuance, neither Debtor nor Jacobson appeared at the Emergency Hearing.[18] At the Emergency Hearing, the Court granted the request for continuance and rescheduled all matters relating to the Bankruptcy Case to August 22, 2018. *See* ECF No. 85 (the "<u>Continuance Order</u>"). Because it appeared from the record that Debtor sought to enjoin postpetition state court litigation initiated by Debtor, the Continuance Order clarified that entry of the order had no impact upon such litigation. *Id.*

g.   <u>Withdrawal of Motions</u>

On August 8, 2018, James O. Williams, Esq., Jessica R. Butler, Esq., and Williams, Leininger & Cosby, P.A. (collectively, the "<u>Williams Parties</u>") filed a response to the "emergency" sanctions motion (ECF No. 67) filed by Debtor against

---

date. The Circuit Court hearing to which your emergency motion is directed has been moved to August 16. May I file an agreed order continuing July 31 hearings to August 7? Please let me know as soon as possible.
ECF No. 82, Exhibit B.

[18] Creditors' counsel represented on the record that his office immediately (i) served notice of the Emergency Hearing to Debtor's counsel, (ii) emailed Jacobson regarding the Emergency Hearing, and (iii) called Jacobson to inform him of the Emergency Hearing.

Creditors, the Williams Parties, and other persons (ECF No. 87) (the "Williams Response"). The Williams Response asserted that (i) Debtor commenced litigation against the Williams Parties in state court postpetition, (ii) under these facts, violation by the Williams Parties of the discharge injunction imposed by operation of 11 U.S.C. § 524 would be impossible, and (iii) in any event, entry of the Continuance Order mooted Debtor's allegations in ECF No. 67 regarding the Williams Parties' supposed violation.

In response, Debtor filed both a "motion" and a "notice" to withdraw ECF No. 67. *See* ECF Nos. 88 and 89. Both documents were identical in form and substance and were uploaded on the same day, just a few hours apart.[19]

> h.  Withdrawal of Counsel

One day later, on August 16, 2018, Jacobson sought to withdraw as counsel to Debtor. ECF No. 90 (the "Withdrawal Motion"). The Withdrawal Motion was unusual in several respects. First, it argued as a basis for withdrawal that Debtor—a non-attorney—could represent himself "better" than counsel. Second, it alleged that Jacobson was the "target" for sanctions simply for "making a case" for stay and discharge violations against Debtor and that Jacobson simply could not effectively represent Debtor as a result. Third, the Withdrawal Motion contended that Debtor's inability to "indemnify" Jacobson for his actions warranted excusing Jacobson from further representation of Debtor. Fourth, it posited that abruptly ending Jacobson's

---

[19] Despite being only one sentence long, the documents still managed to include typographical errors and highly unusual formatting. No satisfactory explanation has ever been provided to the Court for the duplicative filings.

"exposure" to sanctions violations would be an added benefit of withdrawal. Finally, Jacobson filed the Withdrawal Motion immediately prior to an evidentiary hearing on the very motions that were the basis for reopening the case, the prosecution of which was presumably the primary reason for Jacobson's engagement.

That same day, Debtor emailed the Courtroom Deputy to express his concerns regarding a future hearing date for the Sanctions Motions. ECF No. 93 (the "August 16 Email").[20] Because the August 16 Email requested relief in the form of an expedited hearing date, the Court construed it as a motion to shorten time and placed it upon the court docket.

### D. Events Immediately Preceding the Evidentiary Hearing

#### a. The Status Conference

The erratic nature of Debtor's filings, combined with Jacobson's request to withdraw as counsel, prompted the Court to schedule a status conference (ECF No. 95) (the "Status Conference")[21] on September 4, 2018. The Status Conference Order briefly recounted the convoluted pattern of filings and withdrawals, noted the similarity of the relief requested in numerous motions, identified confusing anomalies and typographical errors, and ultimately directed Debtor to clarify precisely which

---

[20] Debtor continued to email the Court *ex parte* communications until specifically directed to file all written correspondence on the docket. ECF No. 100.

[21] The relevant order (the "Status Conference Order") directed Jacobson to serve the order upon all interested parties. He failed to do so, in violation of applicable Local Bankruptcy Rules. *See* Local Rule 5005-1(G)(2). Creditor's Counsel handled service of the Status Conference Order, thereby providing all parties with notice of the anticipated status conference. ECF No. 101.

motions and responses should remain pending.

On September 4, 2018, the Court conducted the Status Conference. Based upon Debtor's and Jacobson's representations, the Court granted Jacobson's request to withdraw as counsel. Prior to Jacobson's withdrawal, the Court clarified on the record that (i) only the motions identified herein as the Sanctions Motions remained pending, (ii) summary judgment was not warranted because material facts remained in dispute, and (iii) the Sanctions Motions required an evidentiary hearing in order for the Court to determine whether the relief sought was appropriate.

b.  <u>RNCP Sanctions Motion</u>

Prior to the Status Conference, Creditors and their counsel filed an opposing motion for sanctions (ECF No. 105) (defined above as the RNCP Sanctions Motion). The RNCP Sanctions Motion alleges that Debtor and his counsel filed ECF Nos. 48, 67, and 73 without any reasonable basis.[22] In support of the RNCP Sanctions Motion, Creditors filed a copy of a "safe harbor" letter (ECF No. 106) sent by Creditors Counsel to Jacobson on February 21, 2017 in compliance with Bankruptcy Rule 9011 ("<u>Rule 9011</u>").

c.  <u>The Evidentiary Hearing</u>

On October 11, 2018, the Court conducted a full-day evidentiary hearing (the "<u>Evidentiary Hearing</u>") on the issues presented in the Sanctions Motions and the

---

[22] ECF No. 52 contains a one-line statement asserting "proof" of filing a motion for sanctions and motion to "strike" a suggestion of bankruptcy. Presumably, Creditors did not respond to this document because it contained no request for relief. Debtor withdrew ECF Nos. 66 and 67, rendering Creditors' response to that motion moot. ECF No. 82 purports to amend ECF No. 73. The Court interprets Creditors' response to ECF No. 73 as applicable to ECF No. 82.

RNCP Sanctions Motion. Jacobson, having withdrawn as counsel, attended the Evidentiary Hearing solely in his individual capacity. Debtor represented himself *pro se*, conducting the examination of witnesses and presenting documentary evidence. The Court permitted both Debtor and Jacobson great leeway in their presentations and testimony to ensure that Debtor received every possible opportunity to present his case.

      d.  <u>Summary of Pending Motions</u>

The numerous filings, withdrawals, and assorted procedural do-si-dos left the Court with the following matters for consideration at the Evidentiary Hearing:[23]

- *Debtors [sic] Motion for Order of Contempt and Judgment Against Rusty Norvell Concrete Pumping Service, Inc. and Janice Norvell and John Norvell Jointly and Severally Pursuant to 11 USC 105, 506, and 524* (ECF No. 48) (defined herein as the Second Contempt Motion)

- *Debtors [sic] Notice of Filing Proof of Stay and Discharge Violation of Rusty Norvell Concrete Pumping Service, Inc., and Janice Norvell and John Norvell Jointly and Severally Pursuant to 11 USC 105, 506, and 524* (ECF No. 52)[24]

- *Debtors [sic] Motion For Order of Contempt and Judgment Against Norman L Schroeder II; Norman L Schroeder P.A.; Wasch and Raines LLP Jointly and Severally Pursuant to 11 USC 105, 506, and 524* (ECF No. 73) (amended by ECF No. 82)

- *Debtors [sic] Amended Motion For Order of Contempt and Judgment Against Norman L Schroeder II; Norman L Schroeder P.A.; Wasch and Raines LLP Jointly and Severally Pursuant to 11 USC 105, 506, and 524 (Amended to include Adam G. Wasch, Esq. only)* (ECF No. 82)[25]

---

[23] The Sanctions Motions all contain at least one (and often multiple) typographic errors in the title. Although the Court has corrected some of the more obvious errors, the descriptions may contain additional errors.

[24] This document is more properly characterized as a notice, but was filed as a motion.

[25] This motion seeks entry of an order of contempt against Creditors' Counsel.

- *Creditors and Creditors' Counsel's Motion for Sanctions and Other Award Under Federal Rule of Civil Procedure 9011(c) and 11 USC § 105(a) Against Debtor Rene Cantin and Debtor's Counsel Donald N. Jacobson* (ECF No. 105) (defined herein as the RNCP Contempt Motion)

In broad brush strokes, the various filings may be grouped as (i) two related motions by Debtor for sanctions and contempt against Creditors and Creditors' Counsel, and (ii) a motion by Creditors and their counsel for Rule 9011 sanctions against Debtor and Jacobson.

## FACTUAL BACKGROUND

A. <u>The Worthless Check</u>

Prepetition, Debtor owned and operated Florida Screen Builders, Inc. ("<u>Screen Builders</u>").[26] Mr. Norvell and Ms. Norvell were (and still are) the owners and officers of RNCP. During May and June 2015, Screen Builders hired RNCP to provide concrete supply and pumping services for at least three different properties.[27]

On July 6, 2015, Screen Builders issued check #7861 to RNCP for $2,927.50 (the "<u>Check</u>") as payment for services rendered.[28] The face of the Check indicated it was drawn on the bank account of Screen Builders maintained at PNC Bank, N.A. and reflects in the signature block for the depositor: "Void After 180 Days.  Signature on File.  This check has been authorized by your depositor."[29] On August 7, 2015, Ms.

---

[26] Debtor's Exhibit 1, p. 39 (signature line).

[27] Debtor's Exhibit 4 (the "<u>Timeline</u>"), p.1.

[28] Debtor's Exhibit 25, pp. 2-3.

[29] *Id.*

Norvell attempted to deposit the Check on RNCP's behalf.[30]

Five days later, the issuing bank, PNC Bank, N.A., informed Ms. Norvell that the account upon which the Check was drawn contained insufficient funds.[31] Another week later, on August 20, 2015, Ms. Norvell filed a complaint with the Worthless Checks Unit at the Sheriff's office.[32]

### B. Filing of the Bankruptcy Cases

Almost two months later, on October 19, 2015, Debtor filed his chapter 7 petition. On November 4, 2015 (the "SB Petition Date"), Screen Builders filed its own chapter 7 petition (the "SB Bankruptcy Case"). Jacobson represented Debtor and Screen Builders in each of their respective bankruptcy cases.

Although record testimony by Debtor indicates that Screen Builders owed RNCP approximately $22,927 as of the SB Petition Date, Screen Builders did not clearly delineate this obligation on its schedules.[33] Instead, the only possible reference to the RNCP obligation in the SB Bankruptcy Case is a reference to "Rusty

---

[30] Creditors' Exhibit A, at ¶ 5; Timeline, p. 1.

[31] Creditors' Exhibit A, at ¶ 6; Debtor's Exhibit 23; Timeline, p. 1.

[32] Debtor's Exhibit 24.

[33] Debtor's questions and personal testimony regarding the amounts owed and amendments to Screen Builders' schedules directly contradicts the record. *Compare* ECF No. 143, Transcript of Evidentiary Hearing on October 11, 2018 (the "Transcript"), at 13:8-15, 86:14-23 *with* ECF No. 7 in Case No. 15-29537, at p. 23 and ECF No. 14 in Case No. 15-29537, at page 7.

Norvell" on Schedule E for an unsecured debt of $1,100.[34]

### C. Debtor's Arrest

On January 14, 2016, at the request of the Sheriff's office, Ms. Norvell supplied a written statement (the "Statement") regarding tender of the Check.[35] The Statement described the circumstances in August 2015 relating to RNCP's receipt of the Check, Ms. Norvell's attempt to verify if there were sufficient funds in Screen Builder's account to honor the Check, and ultimately RNCP's deposit of the Check.[36] Approximately ten days later, on January 25, 2016, the Sheriff issued a warrant for Debtor's arrest.[37]

Ms. Norvell was by then aware of Debtor's Bankruptcy Case, but nonetheless responded to inquiries from the Sheriff's office as part of its investigation of a worthless check charge against Debtor.[38] Although Ms. Norvell cooperated with the Sheriff's office, she testified that she did so only to the extent she was required to do so by the Sheriff's Office.[39] Ms. Norvell provided the Statement as part of that compliance.[40]

---

[34] ECF No. 14 in Case No. 15-29537, at p.7. As discussed in further detail herein, use of the personal name "Rusty Norvell" (a familiar name for Mr. John Norvell) was vague and potentially insufficient for proper service upon any of the Creditors.

[35] Debtor's Exhibit 5.

[36] *Id.*

[37] Debtor's Exhibit 6 (Warrant Affidavit) and Exhibit 7 (Warrant).

[38] Creditors' Exhibit A, at ¶ 8 -11.

[39] Creditors' Exhibit A, at ¶ 12-14.

[40] Creditors' Exhibit A, at ¶ 8 -11.

D.  <u>The State Criminal Case</u>

The State Attorney initiated prosecution of criminal charges against Debtor for uttering the Check on January 22, 2016.[41] The case docket reflects that Debtor vigorously defended himself in the matter, taking discovery and appearing frequently in court.[42] Ultimately, for reasons not apparent from the record, the State court entered an order of *nolle prosequi.*[43]

E.  <u>Notice of the Bankruptcy Cases</u>

On November 30, 2016, Jacobson's billing records indicate that he called Ms. Norvell regarding "allegations."[44] Jacobson followed up with a voice mail on December 6, 2016.[45] Ms. Norvell spoke with Jacobson twice that month and faxed to him copies of (i) a demand letter originally sent to Debtor on August 3, 2015, and (ii) the Check.[46] The record does not indicate that Ms. Norvell ever reached out to Debtor individually.

It is unclear from the record whether any of the Creditors received proper

---

[41] Debtor's Exhibit 9, p. 3.

[42] Debtor's Exhibit 9, at pp. 1-3.

[43] A *nolle prosequi* abandons pending prosecution of a criminal charge but does not prevent the State from subsequently charging the defendant by information or indictment. *Allied Fid. Ins. Co. v. Florida*, 408 So.2d 756, 756-57 nn.2-3 (Fla. 3d DCA 1982).

[44] Debtor's Exhibit 3, Legal Services Invoice (the "<u>Invoice</u>"), p. 3. The Invoice is a joint invoice for both Debtor and Screen Builders, and includes entries for cases in multiple fora. As a result, it is impossible to tell which case prompted the phone call.

[45] *Id.*

[46] Creditors' Exhibit A, ¶ 8.

notice of Screen Builders' bankruptcy. Screen Builders' schedules and statements contain a listing for "Rusty Norvell" with an obvious typographical error in the street address.[47] Because the business to whom Screen Builders owed an obligation is "Rusty Norvell Concrete Pumping Service, Inc.",[48] use of the personal name "Rusty Norvell" (a familiar name for Mr. John Norvell) was vague and potentially insufficient for proper service upon any of the Creditors.

On February 8, 2017, Jacobson's billing records reflect that he called Ms. Norvell regarding "bankruptcy filings".[49] Because Debtor filed his First Motion to Reopen and First Contempt Motion that same day, it is likely that Jacobson's communication pertained to Debtor's personal Bankruptcy Case. At that time, however, neither RNCP nor Ms. Norvell were listed as creditors in Debtor's personal Bankruptcy Case. In fact, Debtor filed the First Motion to Reopen for the express purpose of naming RNCP as a creditor in his personal Bankruptcy Case. *See* ECF No. 28.

F.  The State Civil Case

Ms. Norvell testified that "later in the year" of 2017, Debtor sent her a letter with a copy of a "lawsuit" (likely a complaint) against the Creditors, Sheriff, and State

---

[47] Screen Builders amended the schedules and statements in its bankruptcy case, Case No. 15-29537, on December 11, 2015. *See* ECF No. 14. The amended Schedule F still includes the erroneous street address.

[48] *See* Debtor's Exhibit 22 (letterhead) and Creditors' Exhibit A, at ¶ 2

[49] Invoice, p. 5.

Attorney for the State of Florida (the "State Attorney").[50] During that timeframe, Debtor filed the case styled as *Cantin v. Rusty Norvell Concrete Pumping Service, et al.*, Case No. 2017CA001348, in the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County, Florida (the "State Civil Case").[51] Although the precise nature of the State Civil Case is not apparent from the record, the Court surmises that Debtor sought sanctions in state court against the Creditors, Sheriff, and State Attorney for their individual roles in the prosecution of the worthless check criminal charge.

Ms. Norvell testified that, prior to her receipt of service of the State Civil Case complaint, Debtor requested payment from her, Mr. Norvell, and RNCP not to proceed with the State Civil Case.[52] Ms. Norvell did not respond to Debtor's demand and hired counsel.[53] Prior to the Evidentiary Hearing, Debtor dismissed the State Civil Case.[54]

## ANALYSIS

I.    Violation of the Stay and Discharge Order

Debtor asserts that Creditors violated both the automatic stay imposed by operation of 11 U.S.C. § 362 ("§ 362") and the discharge injunction pursuant to 11

---

[50] Creditors' Exhibit A, at ¶ 16.

[51] *See* Debtor's Exhibit 19 (case style).

[52] Creditors' Exhibit A, at ¶ 16.

[53] Creditors' Exhibit A, at ¶ 16-18.

[54] Creditors' Exhibit A, at ¶ 19. Debtor also informed the Court of the dismissal at the Status Conference.

U.S.C. § 524 ("§ 524"). The automatic stay only endured for the pendency of Debtor's bankruptcy case. The discharge injunction arose in tandem with dissipation of the stay, upon entry of an order granting Debtor a discharge (ECF No. 34) (the "Discharge Order"). Debtor fails to identify precisely which of Creditors' actions fell within the temporal limits of each of the two Bankruptcy Code sections.

As a result of his conflation of §§ 362 and 524, Debtor's factual and legal allegations are hopelessly muddled and require careful parsing.

     a. Section 362

In at least one of the Sanctions Motions (ECF No. 48), Debtor sought entry of an order finding that Creditors violated § 362(a)(6). ECF No. 48, at p. 39 (¶ A). The balance of the Sanctions Motions are less precise in their identification of the relevant subsections of § 362(a). Because Debtor's allegations may be construed as asserting a violation of § 362(a)(1) (in addition to § 362(a)(6)), the Court will consider both subsections.

Subsections (1) and (6) of § 362(a) provide:

(a) **Except as provided in subsection (b) of this section**, a petition filed under section 301, 302, or 303 of this title … operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance of employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
>    …
> (6) any act to collect, assess, or recover a claim against the debtor

that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1) and (6) (emphasis added).

The plain language of § 362(a) specifically excludes situations governed by § 362(b). Section 362(b)(1) provides that "[t]he filing of a petition under section 301, 302, or 303 of this title … does not operate as a stay … of the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1).

    b. <u>Criminal Proceeding Exception to the Automatic Stay</u>

Section 362(b)(1) addresses situations precisely like the one presented here, *i.e.* criminal proceedings initiated prepetition against a debtor. Debtor, however, insists that Creditors' alleged violation should fall within an "exception to the exception" of § 362(b). Debtor is incorrect.

"The purpose of bankruptcy is to protect those in financial, not moral, difficulty." *Barnette v. Evans,* 673 F.2d 1250, 1251 (11th Cir. 1982). A strong public interest exists in every good faith prosecution of a criminal proceeding. *Id.* This common interest outweighs any interest a bankruptcy court may have in protecting the financial interest of debtors. *Id.*

A full understanding of the tension between the State's ability to exercise its police powers and this Court's ability to offer Debtor a fresh start hinges upon notions of federalism. In *Barnette*, the Eleventh Circuit Court of Appeals ("<u>Eleventh Circuit</u>") analyzed this concept in a context similar to the one presented in this Bankruptcy

23

Case.

The *Barnette* debtor, Jim Barnette ("Mr. Barnette"), wrote $37,000 worth of bad checks for the purchase of automobiles and later filed a personal bankruptcy case. *Id.* During Mr. Barnette's bankruptcy case, a grand jury in Montgomery County indicted him for theft by deception pursuant to applicable Alabama statutes. *Id.* Reasoning that prosecution of the theft charge would effectively result in collection of a debt otherwise dischargeable in bankruptcy, the *Barnette* bankruptcy court enjoined Montgomery County from further prosecution. Montgomery County appealed, and the case ultimately reached the Eleventh Circuit on appeal. *Id.*

The Eleventh Circuit sought guidance from *Younger v. Harris,* 401 U.S. 37 (1971) in its consideration of whether the situation presented in *Barnette* warranted injunctive relief. Taking its cues from prior precedent, the United States Supreme Court clarified in *Younger* that a federal court should only grant injunctive relief from a state court criminal prosecution under a very narrow set of unusual circumstances. 401 U.S. at 53-54. That limited universe includes bad faith and harassment, but does not embrace relief for injuries that are "incidental to every criminal proceeding brought lawfully and in good faith," including the necessity of having to defend oneself. *Id.* at 46-47, 54 (internal quotation marks and citation omitted).

To clarify precisely which situations merit injunctive relief at the intersection of bankruptcy and criminal proceedings, the *Barnette* court established what has been described by many courts as a "two-prong" test. 673 F.2d at 1252; *see, e.g., Smith v. Goode (In re Smith)*, 301 B.R. 96, 101 (Bankr. M.D. Ga. 2003). First, the party

seeking injunctive relief (typically the debtor) must demonstrate an immediate danger of irreparable harm arising from a prosecution initiated in bad faith. *Id.* This prong is essentially the same as with any other request for injunctive relief, i.e. that such relief is necessary to avoid an immediate harm, with the added component of evident bad faith. *Koven v. Cox (In re Purity, Inc.),* 189 B.R. 541, 542-543 (Bankr. S.D. Fla. 1995); *Tenpins Bowling, Ltd. v. Alderman (In re Tenpins Bowling, Ltd.)*, 32 B.R. 474, 480 (Bankr. M.D. Ga. 1983) (discussing requirement of bad faith). Second, the aggrieved party must demonstrate that the criminal prosecution jeopardizes a federally-protected right that cannot be otherwise defended in the state court criminal proceeding. *Barnette*, 673 F.2d at 1252; *Smith,* 301 B.R. at 101; *Purity*, 189 B.R. at 542-543. Courts interpreting this prong in the context of state court prosecutions of worthless check charges have observed that a debtor has no federal right to protection from making restitution on a discharged debt. *See Smith*, 301 B.R. at 102; *Tenpins*, 32 B.R. at 480-481.

This Court acknowledges that the *Barnette* test is controlling precedent, and proposes a more precise form of the relevant analysis as applied to this Bankruptcy Case through consideration of three distinct elements: 1) threat of an immediate and irreparable harm from a bad faith prosecution, 2) to a federally protected right, 3) that cannot otherwise be preserved through a defense assertible in the state court criminal action. *C.f. Starr v. Virginia (In re Starr)*, 147 B.R. 380, 382 (Bankr. E.D. Va. 1991) (setting forth 3-part interpretation of *Younger* test); *In re Byrd*, 256 B.R.

246, 252 (Bankr. E.D.N.C. 2000) (quoting same).[55] Application of this test to the Bankruptcy Case handily disposes of Debtor's allegations.

### i. Immediate and Irreparable Harm / Bad Faith[56]

Debtor's assertions of harm all derive from the necessity of defending himself in the State Criminal Case. His arrest, engagement of counsel, and resulting obligation to pay attorney's fees do not represent anything out of the ordinary course for a typical criminal defendant. To the extent that Debtor alleges that Creditors' participation in prosecution of the State Criminal Case indicates a bad faith attempt to collect a debt, the Court disagrees.

The decision to prosecute a worthless check charge rested squarely with the State Attorney. Although Ms. Norvell provided her witness statement during the Bankruptcy Case,[57] she credibly testified that she participated as a witness solely to the extent she believed that she was compelled to do so.

There are very few situations, if any, where a creditor will not hope for some form of redress through restitution. This desire alone does not taint an otherwise

---

[55] The *Starr* interpretation of the *Younger* test contains the same elements as the *Barnette* test, arranged in a slightly different order:

> First, the state court action must be brought in bad faith or for harassment or under extraordinary circumstances. Second, the party requesting federal court intervention must stand to suffer a great and immediate irreparable harm to federally protected rights. Finally, this harm must be such that it cannot be eliminated by a defense against the criminal prosecution.

[56] Although the present posture of the Bankruptcy Case prevents the Court from viewing any alleged harm as "immediate" at this juncture, the Court will nonetheless analyze this element as if the prosecution were ongoing.

[57] Ms. Norvell provided her witness statement on January 14, 2016, approximately two months after the Petition Date and just prior to entry of Debtor's discharge. *See* Debtor's Exhibit 6, at p.2 (Details of Offense as Stated by Victim, ¶ 6); Creditors' Exhibit A at ¶¶ 9-14.

legal and non-harassing criminal prosecution with the specter of bad faith. *Walker v. Gwynn (In re Walker)*, 157 Fed.Appx. 171, 173 (11th Cir. 2005) ("The enforcement of a criminal judgment against a debtor in a restitution hearing does not violate the automatic stay, and a creditor does not violate the automatic stay by assisting the state in enforcing the criminal judgment, even though the creditor's primary motivation is to collect on the debt."); *Kavoosi v. Russell (In re Kavoosi),* 55 B.R. 120, 123 (Bankr. S.D. Fla. 1985).

The Court concludes that Debtor has failed to satisfy the first element of the *Barnette* test. Debtor has failed to demonstrate immediate and irreparable harm deriving from a prosecution initiated in bad faith that occurred prior to entry of the Discharge Order. The Court therefore need go no further in its analysis of a stay violation. To eliminate all doubt as to the invalidity of Debtor's claims, however, the Court will address the remaining elements of the *Barnette* test: a federally protected right and the ability to defend that right. *Smith*, 301 B.R. at 101-02.

## ii. <u>Federally Protected Right</u>

The Bankruptcy Code provides debtors with the ability to restructure, reorganize, and discharge certain debts. It does not provide them with *carte blanche* to engage in otherwise unlawful activity without consequences. *U.S. v. Hamilton*, 755 Fed.Appx. 953, 954 (11th Cir. 2019); *Barnette*, 673 F.2d at 1251. Congress clearly contemplated and addressed this possibility through the drafting and passage of legislation resulting in § 362(b)(1). *See Barnette*, 673 F.2d at 1251.

Neither the filing of the bankruptcy petition nor entry of the Discharge Order

entitled Debtor to escape the State's lawful exercise of its police powers. Entry of the Discharge Order satisfied any federally protected right that Debtor might claim to a "fresh start".

Congressional intent as expressed through the plain language of the Code and binding precedent in this Circuit set forth in *Barnette* unequivocally establish that the State's interest in exercising its police powers for the public good outweighs any private harm experienced by Debtor. No federal right exists to protect a debtor from making restitution when required by law to do so. *Id.* at 1252; *McDonald v. Burrows*, 731 F.2d 294, 298 (5th Cir. 1984) (holding that debtor had no federally protected right to prevent state court from requiring him to repay debts that were the subject of his bankruptcy proceeding). "If restitution of a debt discharged in bankruptcy may be imposed as part of a federal sentence, certainly such restitution may also be imposed by state courts. No federal right of the debtor is impinged, whether restitution is discretionary or mandatory." *Barnette*, 673 F.2d at 1252. *See also Smith*, 301 B.R. at 102 (citing same).

Accordingly, Debtor cannot establish the second element of the *Barnette* test.

### iii.  State Court Defenses

The State's decision to enter a *nolle prosequi* renders the final element of the *Barnette* test largely moot. The record indicates that Debtor vigorously defended himself in the State Criminal Case. There is no indication from the record that he was unable to raise any potentially viable defense, including that of a bad faith

prosecution, in the State Criminal Case.

Once again, Debtor has failed to establish a crucial element of the *Barnette* test. The Court finds that no violation of the automatic stay occurred as a result of (i) the prosecution of the State Criminal Case or (ii) Creditors' participation in that prosecution.

c.  Section 524(a)(2)

Section 524(a)(2) provides that a discharge in a case under title 11 "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ...." 11 U.S.C. § 524(a)(2). The Court entered Debtor's Discharge Order on January 22, 2016.

Debtor alleged violations of the discharge injunction in addition to the purported violation of the automatic stay. These claims are baseless for two reasons: 1) Creditors filed their initial complaint well before the Petition Date, and 2) the Court entered the Discharge Order *after* Ms. Norvell provided her Statement to the Sheriff's office. These two simple uncontested facts are determinative. No discharge violation occurred.

Assuming for the sake of argument, however, that Debtor's claims include acts by Creditors—albeit unspecified—occurring after entry of the Discharge Order, and further assuming Creditors' motivation in performing the offending acts included repayment of their debt, the Court still concludes that no discharge violation

29

occurred.

Criminal prosecutions are a fluid process. The state may investigate, pursue, and prosecute claims over an extended period. This period typically does not coincide perfectly with the (often unrelated) filing of a bankruptcy petition. As a result, many courts have adopted a "prepetition/postpetition" test to determine whether a creditor's actions violate the stay or discharge injunction. *Otten v. Majesty Used Cars, Inc. (In re Otten)*, Adv. Proc. No. 12-8045-ast, 2013 WL 1881736, at *8 (Bankr. E.D.N.Y. May 3, 2013).

The easiest demarcation to draw is also the most obvious: the initial filing of a criminal complaint. Consequently, many courts look to this act as the "key" to determining whether a creditor has run afoul of the automatic stay or discharge injunction. *Id.* at *8. Where the creditor initiated criminal proceedings prepetition, and the decision to prosecute rested with the government, courts often decline to find bad faith. *Buckley v. Patel (In re Buckley)*, Adv. Proc. No. 14-5330, 2015 WL 798535 at *3 (Bankr. N.D. Ga. Feb. 17, 2015) (creditor's postpetition meeting with prosecutors did not indicate bad faith). By contrast, where a complaining creditor has initiated or threatened criminal proceedings post-petition, some courts may view this act as indicative of bad faith. *See In re Byrd*, 256 B.R. at 252; *Otten*, 2013 WL 1881736 at *8 (citing same). *C.f. Weary v. Poteat (In re Poteat),* Case No. 3:14-CV-46-TAV-HBG, 2015 WL 4747883, at *2-5 (E.D. Tenn. Jan. 8, 2015) (harassing letters sent postpetition by creditor did not fundamentally aid prosecution of criminal proceeding and violated stay).

Motive in pursuing postpetition criminal proceedings is relevant in jurisdictions that employ the "primary motivation test," which considers the subjective intent of the creditor as a basis for determining whether the offending acts violate the stay or discharge injunction. *Otten*, 2013 WL 1881736, at *9. The Eleventh Circuit, however, has rejected the principal motivation test. *Walker*, 157 Fed. Appx. at 173; *Tenpins Bowling*, 32 B.R. at 480 ("[T]he Eleventh Circuit in *Barnette* rejected the 'principal motivation' test and adopted a 'bad faith' test …."). Consequently, Debtor's complaints regarding Creditors' purported use of the criminal process to collect a debt are only relevant if Debtor can show that the entire proceeding was brought in bad faith. *Id.* Debtor cannot make that showing.

At the Evidentiary Hearing, Debtor suggested that Mr. Norvell's familial history with law enforcement influenced the prosecution of the Check. *See, e.g.* Transcript at 7:18-9:17. Although Debtor failed to acknowledge, much less apply, the *Barnette* test (which is controlling precedent in this Circuit), the Court will construe Debtor's offer of this testimony as tendered in support of the "bad faith" component of the *Barnette* test. Even with this concession, Debtor's allegations fail.

The Court finds that any connection between past family members' service in law enforcement and the State Criminal Case are too attenuated to support Debtor's claims. Debtor did not show that any of the Norvell family members in law enforcement (some of whom are deceased)[58] interacted with the State Attorney regarding his prosecution, nor did he demonstrate that Creditors sought the

---

[58] Debtor's Exhibit 29.

assistance or advice of these family members. In addition, Ms. Norvell credibly testified that she limited her postpetition involvement with the State Criminal Case to only those actions requested by the State. Creditors' Exhibit A at ¶¶ 9-14; Transcript at 35:9-11, 53:9-64:12.

Accordingly, even permitting the greatest leeway possible in interpretation of the evidence and construing Debtor's legal allegations in the manner most beneficial to Debtor, the Court still determines that Debtor has failed to meet his burden of demonstrating a violation of the discharge injunction.

## II.   Additional Issues

The highly unusual facts of this case require the Court to clarify a few ancillary points.

First, the Court observes that notice to Creditors of the Bankruptcy Case was neither timely nor properly executed. *See* Procedural History, *supra*.

Second, the procedural snafus resulting from Debtor's haphazard and ill-thought-out pleadings were legion. These errors and omissions caused great consternation to all parties involved, as well as the Court, and unnecessarily complicated what ought to have been a straightforward legal analysis. The confusion and disarray caused by Debtor's and Jacobson's disjointed, procedurally improper, and repetitive filings unquestionably delayed issuance of this Opinion.

Third, one of the finer points obscured by Debtor's pleadings is the provenance of the debt. As noted above, the original debt was not between Debtor and Creditors, but rather between Screen Builders and Creditors.

There is no connection between Debtor and Creditors other than through the business dealings between Screen Builders and RNCP. The record demonstrates that the business relationship suffered after the Check failed to clear, and that Ms. Norvell took steps prior to the filing of either bankruptcy case to avail RNCP of state court remedies.

Although it is true that the arrest warrant lists Debtor personally, rather than Screen Builders, this is entirely logical. Debtor was the president of the business, and his actions caused the Check to be issued.[59] Creditors supplied the State with a copy of the Check, which indicated on its face that Screen Builders was the payor. Pursuit of Debtor for his role in uttering the worthless Check was ultimately the State's decision, not Creditors'.

III.    <u>Debtor's Sanctions Motions and Contempt Allegations</u>

The Sanctions Motions collectively implore this Court to enter a finding of civil contempt against Creditors and Creditors' Counsel. The Court will not do so.

A court must base a finding of civil contempt upon clear and convincing evidence that the relevant person or entity violated a prior court order. *Jove Eng'g v. I.R.S.*, 92 F.3d 1539, 1545-46 (11th Cir. 1996). The court must specifically determine whether: "1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with

---

[59] Debtor attempted to show that he may not have been the person to physically sign or issue the Check, but did not dispute that he was aware of its issuance. *See* Transcript at 145:2-149:15. Because a thorough discussion of *respondeat superior* is well beyond the scope of this opinion, the Court simply notes that Debtor failed to demonstrate that he was unaware of the Check or ignorant of Screen Builders' financial state at the time it was uttered.

the order." *Id.* (internal citation omitted). The enforcing court has at least three potential bases for a finding of sanctions: (i) the underlying procedural rule or code section (i.e. Rule 9011), (ii) 11 U.S.C. § 105, and (iii) the court's inherent authority to issue sanctions.  Fed. R. Bankr. P. 9011; 11 U.S.C. § 105; *Glatter v. Mroz (In re Mroz),* 65 F.3d 1567, 1574-75 (11th Cir. 1995) (describing inherent authority of court to issue sanctions). Enforcement of a court order therefore typically entails a detailed fact-specific analysis, and the appropriate basis for enforcement may vary depending upon the nature of the alleged violation. *Jove Eng'g*, 92 F.3d at 1546; *Mroz*, 656 F.3d at 1575.

Debtor seeks a finding of contempt and sanctions under either 11 U.S.C. § 105 or the inherent power of the Court.[60] Regardless of the asserted basis for relief, the result is the same. The Court declines to award sanctions in favor of Debtor.

None of Creditor's acts during the postpetition period violated a prior order of this Court. There is no discernible basis for a finding of contempt. Not a single one. Under binding Eleventh Circuit case law, neither the automatic stay nor the discharge injunction prohibited Creditors' cooperation with the State's prosecution of the worthless check charge. Debtor's alleged utterance of the worthless check and retaliatory litigation strategy prompted every act taken by Creditors and Creditors' Counsel in this Bankruptcy Case. The Court finds that Creditors and Creditors'

---

[60] Debtor's failure to issue a "safe harbor" letter in compliance with Rule 9011 forecloses any possibility of sanctions pursuant to Rule 9011.

Counsel responded within all appropriate procedural bounds.[61]

The Court therefore declines to issue sanctions for contempt as to Creditors, Creditors' Counsel, or any other collateral person or entity named in the Sanctions Motions.

IV.    RNCP Sanctions Motion

A.    Rule 9011

Creditors seek sanctions pursuant to Rule 9011.[62] Rule 9011(b) provides as follows:

> **(b) Representations to the court**
> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the

---

[61] The Court particularly commends Creditors' Counsel for remaining professional and cordial throughout the proceedings in this Bankruptcy Case.

[62] The text of Rule 9011 is roughly equivalent, although not identical, to Federal Rule of Civil Procedure 11. *Mroz*, 65 F.3d at 1572; *Cadle Co. of Conn. v. Benevento (In re Benevento),* Adv. Proc. No. 11-01011-EPK, 2013 WL 1292671, at *10 (Bankr. S.D. Fla. 2013). Because of this similarity, case law related to Rule 11 is highly persuasive. *Id.*

> evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b).

The party seeking Rule 9011 sanctions must provide the opposing party with an opportunity to correct the purported offense prior to seeking sanctions. *See* Fed. R. Bankr. P. 9011(c)(1)(A). If the conduct remains unremedied after 21 days despite tender of a "safe harbor" notice, the movant may then seek an award of court-imposed sanctions. *Gwynn v. Walker (In re Walker)*, 532 F.3d 1304, 1308 (11th Cir. 2008).

The party seeking sanctions bears the burden of proof of entitlement. *Johnson v. Weihert (In re Weihert)*, 489 B.R. 558, 568 (Bankr. W.D. Wis. 2013); *In re McLean Wine Co., Inc.*, 463 B.R. 838, 857 (Bankr. E.D. Mich. 2011); *In re Weaver*, 307 B.R. 834, 841 (Bankr. S.D. Miss. 2002). Once the movant has made a *prima facie* case, however, the burden shifts to the party from whom sanctions are sought to show a legitimate purpose for the problematic filing. *In re Kliegl Bros. Universal Elec. Stage Lighting Co.,* 238 B.R. 531, 541 (Bankr. E.D.N.Y. 1999).

Sanctions are appropriate where the filing at issue is (1) frivolous, legally unreasonable, or without factual foundation, or (2) presented in bad faith or for any improper purpose, such as to harass opposing parties, unnecessarily delay proceedings, or needlessly increase the cost of litigation. *Mroz*, 65 F.3d at 1572. The court's evaluation of a potentially sanctionable filing requires a two-step analysis. First, the court must determine whether the filing is frivolous or improper. *Id.* at 1573. Second, the court must ascertain whether the filer should reasonably have been aware of the frivolity or impropriety at the time of filing. *Id.*

36

Rule 9011 requires application of an objective standard to analyze the reasonableness of a party's conduct. *Id.*; *see also Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 481 (6th Cir. 1996); *Kliegl Bros.,* 238 B.R. at 541 (objective standard governs Rule 9011 sanctions). The evaluation assesses the reasonableness as the time of filing, without employing the amplified wisdom of hindsight.[63] *Mroz*, 65 F.3d at 1572.

Pursuant to Rule 9011(c), the Court may, in its discretion, impose appropriate sanctions upon attorneys, law firms, or parties if "after notice and a reasonable opportunity to respond, the [C]ourt determines that subdivision (b) has been violated." *See* Fed. R. Bankr. P. 9011(c). Courts may impose sanctions for filing pleadings and later advocating positions without evidentiary support. *In re Evergreen Sec., Ltd.*, 384 B.R. 882, 931 (Bankr. M.D. Fla. 2008). Similarly, factually groundless allegations lacking cognizable evidentiary support merit Rule 9011 sanctions. *Id.* Sanctions are equally appropriate where the presenter has ignored the plain language of the applicable statute or deliberately failed to cite controlling contrary authority. *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990); *Evergreen Sec.*, 384 B.R. at 931 (quoting same).

Rule 9011(c)(2) delineates the permissible scope of sanctions:

**(2) Nature of sanction; limitations**
A sanction imposed for violation of this rule shall be limited to what is

---

[63] Although not in the context of a Rule 9011 motion, the Supreme Court of the United States has instructed that when determining whether a motion or claim was frivolous, "it is important that a . . . court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." *Sullivan v. Sch. Bd. of Pinellas Cty.*, 773 F.2d 1182, 1188-89 (11th Cir. 1985) (*quoting Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)).

sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

> (A)  Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).
>
> (B)  Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

Fed. R. Bankr. P. 9011(c)(2).

The purpose of Rule 9011, like Federal Rule of Civil Procedure 11, is to deter baseless filings. *Benevento,* Adv. Proc. No. 11–01011–EPK, 2013 WL 1292671, at *11 (Bankr. S.D. Fla. Mar. 27, 2013) (quoting *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010)). Accordingly, the Court has considerable discretion under Rule 9011(c)(2) to tailor sanctions to the precise situation presented, provided the sanction adheres to the limitations of Rule 9011(c)(2). Rule 9011(c); *In re Fazzary,* 530 B.R. 903, 911 (Bankr. M.D. Fla. 2015).

B. <u>Creditors' Allegations</u>

In the RNCP Sanctions Motion, Creditors allege the following factual bases for this Court's potential imposition of sanctions:

- Debtor filed multiple motions, including ECF Nos. 48, 67, and 73, without sufficient factual or legal basis.
- Neither Debtor nor Jacobson conducted discovery in the Bankruptcy Case, the SB Bankruptcy Case, or the State Civil Case to support Debtor's allegations and requests for sanctions from this Court.
- Debtor filed the Sanctions Motions as a tactical ploy to avoid litigation in State

38

Court to which the automatic stay did not apply.

- Debtor styled ECF No. 67 as an "emergency" motion without any basis for doing so.
- Debtor filed ECF No. 67 despite correspondence from Creditors' counsel indicating unavailability for hearing.

In addition, the complete records of this Bankruptcy Case and the Screen Builders Case collectively provide ample fodder for the Court's consideration.

C. <u>Analysis</u>

The Court will analyze sanctions against Jacobson and Debtor on an individual basis.

1) <u>Sanctions Against Jacobson</u>

The convoluted and contorted procedural history of these proceedings needlessly taxed litigants and the Court. The potential bases for a finding of sanctions against Jacobson are myriad, sufficiently so that the Court finds it necessary to address the violations as falling within three facets of consideration: (a) candor to the tribunal, (b) competence, and (c) professionalism. Although certain actions overlap categories, the tripartite analytical scheme indicates the severity of the violations.

(a) <u>Candor to the Tribunal</u>

Jacobson filed at least seven "motions"[64] for contempt and sanctions arising from Creditors' alleged violation of the automatic stay and discharge injunction. In each, Jacobson pursued the legal theory that Creditors' participation in the State Criminal Case warranted sanctions. Jacobson advanced this theory by citing over 30

---

[64] Some documents styled as "motions" were actually notices.

cases.[65] He strenuously advocated again and again that Creditors' participation in the State Criminal Case was, in and of itself, sanctionable.

Jacobson's greatest failing was simple, but breathtaking. He failed to identify precedential case law that is binding upon this Court. Not only did Jacobson fail to disclose the existence of *Barnette* and *Walker*, two Eleventh Circuit opinions directly on point, but he also failed to distinguish these cases in any manner. In addition, Jacobson expressly (and bizarrely) elicited testimony from Debtor stating that neither he nor Jacobson sought "to extend the law, modify, or reverse the existing law." Transcript at 182:14-20.[66] In short, Jacobson foreclosed even the possibility of a good faith defense for his actions by his own presentation of evidence at the Evidentiary Hearing.

Jacobson compounded his error by either deliberately misinterpreting or misrepresenting many of the cases cited in the Sanctions Motions.[67] Basic legal research quickly demonstrates that the legal standard for violation of the automatic stay differs greatly depending upon whether the alleged violation occurred as a result of civil, rather than criminal, proceedings. For reasons described in much greater detail above, including the necessity of permitting a state's valid exercise of its police

---

[65] This number includes cases presented by Debtor at the Evidentiary Hearing. Jacobson testified that he and Debtor jointly pursued the research throughout the Bankruptcy Case, which is by itself concerning. Transcript at 180:25-181:5, 182:14-20.

[66] Although Jacobson had previously withdrawn as counsel, the Court permitted him to testify and conduct a brief examination of Debtor at the Evidentiary Hearing in response to Creditors' request for sanctions.

[67] None of the cited cases is precedential, and many are from far-flung jurisdictions. Although this Court holds great respect for its sister courts throughout the nation, the Court is constrained to follow precedential case law within this Circuit.

powers, Congress included language in § 362(b)(1) to address a situation precisely like Debtor's. Although courts can and do differ in their interpretations of § 362(b)(1) based upon specific facts and governing precedent, no court may simply ignore the plain language of the Bankruptcy Code. By failing to address the status of case law interpreting § 362(b)(1) *within this Circuit* and likewise failing to differentiate between the application of § 362(a) and (b), Jacobson committed an error so basic that it calls into question two other aspects of the Court's analysis: competence and professionalism.

### (b) Competence

The Court finds itself in the unenviable position of debating the competence of an attorney who has many years of professional experience. The Florida Bar, which operates as an arm of the Florida Supreme Court for disciplinary matters, typically addresses issues of this nature. *Jilani v. FPL Group, Inc.,* No. 09-23659-CIV, 2010 WL 11606117, at *2 (S.D. Fla. June 14, 2010) ("Florida's Constitution grants to the Supreme Court of Florida exclusive jurisdiction to regulate admission and impose discipline for violating the Bar's rules. … The Florida Bar is an official arm of the Florida Supreme Court in the administration and discipline of attorneys.") (internal citations omitted); *Mason v. Florida Bar*, No. 6:05-CV-627-28JGG, 2005 WL 3747383, at *3 (M.D. Fla. Dec. 16, 2005) (Florida Bar disciplinary proceedings are judicial in nature). Consequently, the Court will not analyze Jacobson's competence or lack thereof and merely describes behavior meriting a deeper review:

- Failure to identify, disclose, or distinguish precedential case law

41

- Submission of case law that is no longer good law[68]
- Failure to properly inform Debtor of deficiencies in his Bankruptcy Case and the SB Bankruptcy Case, including:
  - Accurate and timely notice to creditors[69] and
  - Accurate and timely listing of obligations
- Filing and withdrawal of numerous documents in a haphazard fashion
- Failure to clearly distinguish between § 362 and § 524 in legal argument
- Submission of incomprehensible pleadings with numerous typos and grammatical errors[70]

Because matters of competence are properly left to the jurisdiction of The Florida Bar, the Court simply notes that the amount and nature of Jacobson's errors raised a question of whether the factual omissions and baseless legal assertions resulted from purely sanctionable misconduct, or whether a more profound issue of competence should be assessed by the proper body to undertake such analysis.

(c) Professionalism

The July 17 Email Exchange provides the perfect synopsis of Jacobson's professional demeanor throughout the litigation of the Sanctions Motion: belligerent, unprofessional, and inappropriate. During Jacobson's testimony, the Court repeatedly reminded Jacobson that he was testifying as a witness, not presenting legal argument. *See, e.g.,* Transcript at 172:2-175:7. Although somewhat mollified in

---

[68] *See, e.g.,* Debtor's citation to *In re Diaz*, 452 B.R. 257 (Bankr. M.D. Fla. 2009) at ECF No. 48, page 11, ¶ 35. The Eleventh Circuit reversed *Diaz* over seven years ago. *Florida Dept. of Revenue v. Diaz (In re Diaz)*, 647 F.3d 1073 (11th Cir. 2011).

[69] Jacobson served as counsel to Debtor in the State Criminal Case, the Bankruptcy Case, and the SB Bankruptcy Case. It is inconceivable that he did not realize that notice should be supplied to Creditors long before the filing of the First Motion to Reopen.

[70] The Court acknowledges that all attorneys can make minor mistakes, and that courts (including this Court) are often guilty of typographical errors. Jacobson's submissions on Debtor's behalf, however, contained an extraordinary number of written errors.

the moment, Jacobson continually returned to his combative stance. The Court appreciates that most attorneys find it difficult to act as witnesses rather than as counsel, but the frequency and severity of Jacobson's outbursts demonstrated contumacious disregard for the sanctity of the evidentiary process.

2) <u>Sanctions Against Debtor</u>

At the Evidentiary Hearing, Creditors waived Rule 9011 sanctions against Debtor and requested sanctions only against Jacobson. Since that time, however, Debtor has persisted in filing pro se motions following Jacobson's style of highly litigious posturing. *See, e.g.*, ECF Nos. 151, 153, 154, 155, 156, 157, 158, and 161. Although the Court believes that sanctions against Debtor may be appropriate, in light of the severity of Jacobson's misconduct, and the likelihood of Debtor's reliance upon Jacobson's counsel prior to his withdrawal, the Court will refrain from an analysis of *sua sponte* sanctions against Debtor at this time. The Court will revisit the issue of sanctions against Debtor at the Fee Hearing (defined herein).

3) <u>Final Observations</u>

The Court regrets the necessity of sanctioning a long-standing member of the Florida Bar.[71] It is unclear why Jacobson did not dissuade Debtor from pursuing a meritless path of litigation in this Bankruptcy Case. Because Debtor has continued to file outrageous pleadings after Jacobson's withdrawal, it is entirely possible that

---

[71] The Court has invested a great deal of time and care in a thorough review of all relevant pleadings, detailed research, and thoughtful analysis. The Court does not arrive at the decision to sanction Jacobson lightly. The Court carefully considered the minimum type and nature of sanctions required to effectively dissuade future instances of similar conduct. These factors heavily influenced the Court's decision to draft a fulsome memorandum opinion carefully outlining the basis for sanctions.

the motivating force behind the toxic litigation strategy exhibited in this Bankruptcy Case arose from Debtor, not Jacobson. Jacobson, however, bore the burden of advising Debtor of the deficiencies in his Bankruptcy Case and legal arguments over a period of years prior to his withdrawal.

In addition, Jacobson bore the responsibility of providing the Court with properly-researched and procedurally appropriate pleadings.[72] This failure, combined with instances of professional incivility, provide ample basis for an award of sanctions to Creditors. Jacobson's scattershot method of repetitively filing largely incomprehensible pleadings replete with typographical errors indicates an outrageous lack of care that contributed greatly to the charged emotions clearly present in these proceedings.

The testimony at the Evidentiary Hearing illustrates Debtor's fervent belief that he suffered harm as a result of his arrest. Debtor steadfastly remains unwilling (or perhaps unable) to see that his arrest occurred as a foreseeable consequence of his own conduct in tendering a bad check. Debtor's desire to seek redress by casting the blame upon Creditors is palpable. Unfortunately for Debtor, both the Bankruptcy Code and well-established precedential case law within this Circuit categorically deny Debtor the relief he seeks.

## CONCLUSION

Having considered all relevant evidence and all case law submitted by Debtor, the Court discerns no legal merit in Debtor's claims of Creditors' alleged stay and

---

[72] *See* Rule 9011(b); *see also* L.R. 5005-4(D).

discharge violations. Debtor's claims directly contravene well-established precedential case law that is binding upon this Court.

Accordingly, the Court, having considered the (i) Sanctions Motions, (ii) all related filings, (iii) the responses to the Sanctions Motions, (iv) the RNCP Sanctions Motion, (v) all relevant exhibits submitted in this Bankruptcy Case, (vi) the arguments and testimony of all parties present at the Evidentiary Hearing, (vii) the full record of this Bankruptcy Case and the SB Bankruptcy Case, and the Court being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that:

1. The Court **DENIES** each of Debtor's pending Sanctions Motions, including ECF Nos. 48, 52, 73, and 82. To the extent that the Court might construe any other document filed by Debtor as containing a request for contempt or sanctions, the Court likewise **DENIES** any such request.

2. The Court **DENIES** any request for payment of Debtor's attorney's fees in this Bankruptcy Case. This denial encompasses any request for fees submitted by Debtor as of the date of entry of this Order, regardless of when or how Debtor submitted such request.

3. The Court **GRANTS** the RNCP Sanctions Motion. The Court specifically finds and holds that Creditors and Creditors' Counsel are entitled to the reasonable amount of all attorneys' fees and costs incurred by Creditors in this Bankruptcy Case (collectively, the "<u>Fee Sanction</u>").

4. The Court **DIRECTS** Jacobson to pay the Fee Sanction in full.

5. **The Court will conduct a hearing to determine the amount of the**

**Fee Sanction on July 17, 2019 at 1:30 p.m. (the "<u>Fee Hearing</u>") at the Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom A, West Palm Beach, FL 33401.**

6. Creditors shall file a summary of all fees and costs incurred in this Bankruptcy Case, accompanied by an exhibit containing detailed time entries, on or before June 14, 2019.

7. Debtor and Jacobson shall file any potential objection to the amount of the Fee Sanction on or before June 28, 2019. Debtor and Jacobson may object **<u>only</u>** as to amount. The Court will not entertain any further argument regarding Creditors' entitlement to the Fee Sanction.

8. The Court reserves jurisdiction to impose additional punitive sanctions upon Debtor and Jacobson at the Fee Hearing.[73]

9. The Court reserves jurisdiction to determine all matters arising from or relating to the implementation of this Order.

###

Copy furnished to:

All interested parties by the Clerk

The Florida Bar, Attn: Attorney/Consumer Assistance Program
651 East Jefferson Street
Tallahassee, FL 32399

---

[73] The Court strongly urges Debtor and Jacobson to refrain from submitting any further frivolous filings to this Court, at the risk of incurring additional sanctions.